## LOWNSBURY et al. v. SECURITIES AND EXCHANGE COMMISSION et al.

### No. 9015.

Circuit Court of Appeals, Third Circuit.

Argued Aug. 13, 1945.

Decided Sept. 11, 1945.

As Amended Sept. 22, 1945.

Rehearing Denied Oct. 2, 1945.

Further Rehearing Denied Jan. 15, 1946.

Alfred J. Snyder, of Philadelphia, Pa. (William H. Brantley, Jr., and Lange, Simpson, Brantley & Robinson, all of Birmingham, Ala., and Elizabeth C. Lownsbury, of Philadelphia, Pa., on the brief), for petitioners.

Roger S. Foster, S.E.C., of Philadelphia, Pa., for S.E.C., respondent.

George Roberts, of New York City, for Commonwealth & Southern Corporation, respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case arises upon the motion of the Securities and Exchange Commission to dismiss the petition of certain stockholders of The Commonwealth & Southern Corporation for review of present orders[1] of the Commission, respondents, and to dismiss a motion, also made by the same petitioners, for a stay of all proceedings, pending review by this Court. The controversy centers upon interpretation of two sections of the Public Utility Holding Company Act of 1935[2] in relation to court review of the corporation's reorganization plan.

The primary question involved is whether this Court is the proper forum to test the Commission's orders pursuant to section 24(a)[3] of the Act, as petitioners allege, or

---

[1] Order of June 30, 1945; Order of July 18, 1945.

[2] 15 U.S.C.A. §§ 79 to 79z—6; 49 Stat. 803, Act of Aug. 26, 1935, c. 687, §§ 1–33.

[3] § 24(a). "Any person or party aggrieved by an order issued by the Commission under this chapter may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the Commission, or upon any officer thereof designated by the Commission for that purpose, and there-upon the Commission shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reasonable grounds for failure so to do. The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Commis-

whether the District Court is the proper forum pursuant to section 11(e),[4] as the Commission alleges.

The orders of the Commission are expressly stated not to be deemed operative to authorize any of the transactions contemplated by the plan until a District Court has entered an order enforcing the plan. The orders also condition the effectiveness of the plan upon its approval by vote of the corporation's shareholders, prior to submission to a District Court. The orders are then, argues the Commission, interlocutory and general review provisions, in a statute, as to agency orders do not apply to those which are merely interlocutory. Federal Power Commission v. Metropolitan Edison Co., 1937, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408.

The conditional nature of the Commission's order is apparently a method of so framing its mandate as to avoid the seeming inconsistency involved in sections 11(e) and 24(a) of the statute. If effective, an orderly review following Commission action is provided for through District Court, Circuit Court of Appeals, and possibly Supreme Court, in proceedings in which all parties in interest may be participants.

The very question before us as to effectiveness of the device was before the Second Circuit in a case, which while showing some difference on facts, presented no difference in legal question which we can see. Okin v. Securities and Exchange Commission, 2 Cir., 1944, 145 F.2d 206, remanded as to a point not relevant to our question 1945, 325 U.S. 840, 65 S.Ct. 1569.

The Second Circuit took squarely the position the Commission contends for here. In support of its conclusion, the Court stressed the significance of the express provision for general review in 11(b) and its omission in 11(e); "the practicalities of the situation"; and "the legislative history of the Act, evincing a Congressional intent that the relationship of the Securities and Exchange Commission and the district court provided for in § 11 should be 'exactly' the same as that of the Interstate Commerce Commission and the district court in railroad reorganization under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205." [145 F.2d 208.]

We think this decision is completely in point and that it discusses the problem thoroughly, reaching a result which we believe to be correct. No object would be

---

sion, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court affirming, modifying, or setting aside, in whole or in part, any such order of the Commission shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 346 and 347 of Title 28."

4 § 11(e). "In accordance with such rules and regulations or order as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers, any registered holding company or any subsidiary company of a registered holding company may, at any time after January 1, 1936, submit a plan to the Commission for the divestment of control, securities, or other assets, or for other action by such company or any subsidiary company thereof for the purpose of enabling such com-

pany or any subsidiary company thereof to comply with the provisions of subsection (b). If, after notice and opportunity for hearing, the Commission shall find such plan, as submitted or as modified, necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan, the Commission shall make an order approving such plan; and the Commission, at the request of the company, may apply to a court, in accordance with the provisions of subsection (f) of section 79r of this chapter, to enforce and carry out the terms and provisions of such plan. If, upon any such application, the court, after notice and opportunity for hearing, shall approve such plan as fair and equitable and as appropriate to effectuate the provisions of this section, the court as a court of equity may, to such extent as it deems necessary for the purpose of carrying out the terms and provisions of such plan, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located; and the court shall have jurisdiction to appoint a trustee, and the court may constitute and appoint the Commission as sole trustee, to hold or administer, under the direction of the court and in accordance with the plan theretofore approved by the court and the Commission, the assets so possessed."

served in repeating what has been so adequately discussed in that opinion.

The petition for review of the orders of the Securities and Exchange Commission is dismissed and the motion for stay of proceedings denied.

BIGGS, Circuit Judge (concurring).

The modified plan submitted by the Commonwealth & Southern Corporation under Section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k (e), has been found by the Securities and Exchange Commission to effect compliance by Commonwealth with the requirements of the Commission's order of April 9, 1942[1] entered pursuant to the provisions of Section 11(b) (2) of the Act, 15 U.S.C.A. § 79k (b) (2). The Commission has entered its order of June 30, 1945 approving the plan and its later order of July 18, 1945 denying rehearing. These are the orders which the petitioners, common stockholders of Commonwealth, seek to have reviewed by this court pursuant to the provisions of Section 24(a) of the Act, 15 U.S.C.A. § 79x (a). The merits of the plan are not before us. We are concerned first with the question of whether this court is the proper forum for the review of the Commission's orders and second, with the question of the petitioners' application for a stay of all other proceedings. If the answer to the first question is in the negative, no stay may be granted.

The Commission takes the position that this court is without jurisdiction to review the decision of the Commission, pointing out that effectuation of Commonwealth's plan is conditioned by the terms of the Commission's order upon approval by a majority of each class of stock affected and by a district court of the United States pursuant to Section 11(e) of the Act; that since the order is so conditioned the petitioners are not "aggrieved" by it within the purview of Section 24(a); that the right of the petitioners to test the question of whether the plan is fair and equitable and appropriate to effectuate the provisions of Section 11 must be tried in a district court. The plan has not yet been submitted to a district court and the Commission states that it will not submit the plan unless it is approved by the stockholders.

If the various subsections of Section 11 be scrutinized the following appears. Subsection (a) provides that it shall be the duty of the Commission to examine the properties of public utility holding systems subject to the Act to the ends of integration and simplification. Subsection (b) provides that the Commission shall compel the integration and simplification of public utility holding-company systems by its orders. Subsection (b) also contains express language providing for judicial review of the Commission's order pursuant to Section 24. Subsection (b) of Section 11 is the policy effecting clause of the statute and deals with integration and simplification, not with the rights of the individual investors as such. The words "fair and equitable" are not used in subsection (b) and the word "plan" does not appear therein except in connection with the distribution of voting power. This conception was expressed by this court in Commonwealth & Southern Corporation v. Securities and Exchange Com'n, 3 Cir., 134 F.2d 747, 751.[2] There may be in fact no definite "plan" in the Commission's mind when it makes orders of divestment. There may be no identification of the single integrated system or additional systems which may be retained. See United Gas Improvement Co. v. Securities and Exchange Com'n, 3 Cir., 138 F.2d 1010, 1016 and Engineers Public Service Co. v. Securities and Exchange Com'n, 78 U.S.App. D.C. 199, 138 F.2d 936.

If the holding company refuses to comply with the Commission's orders in accordance with subsection (c), 15 U.S.C.A. § 79k (c), the Commission may apply to a court in accordance with Section 11(d), 15 U.S.C.A. § 79k (d) to effect compliance by the means provided by Section 18(f), 15 U.S.C.A. § 79r (f). Subsection (d) also speaks of a plan, providing that when a district court has taken jurisdiction the court

---

[1] Page 3, Holding Company Act of 1935, Release No. 5825.

[2] As follows: "The orders to be entered by the Commission under section 11(b) are fundamental directions that the companies involved achieve a stated result in integration of operations, divestment of non-integrated properties, simplification of corporate structure or distribution of voting power in order to meet the standards established by the Section. While these orders are final and binding determinations of the result to be achieved it seems clear that Congress intended that the Commission might leave open for later consideration the detailed means by which the result directed should be accomplished."

may dispose of the assets of the holding company "in accordance with a fair and equitable reorganization plan" approved by the Commission.

The function of subsection (f) is plain. It provides, as has been indicated, that if a plan of reorganization be proposed for a public utility holding company within the terms of the Act, already made subject to the jurisdiction of a district court because of the refusal of the company to comply with an integration or simplification order, the plan must be approved by the court. But it also provides a method for approving a plan when a district court has taken jurisdiction of the holding company under some statute other than the Holding Company Act. Proceedings pursuant to Section 77B or Chapter 10 of the Bankruptcy Act as amended, 11 U.S.C.A. § 207 or § 501 et seq. afford an example. The court in all these cases must determine whether or not the plan of reorganization submitted to it is fair and equitable. If the plan is to be approved the court must determine also that the provisions of the plan will effect the policies embodied in the Act. See In re Midland United Co., D.C.Del., 58 F.Supp. 667. In Gilbert v. Securities and Exchange Com'n, 146 F.2d 513, the Circuit Court of Appeals for the Seventh Circuit dismissed petitions seeking review by that Court pursuant to Section 24(a) of orders of the Commission approving the plan for the reorganization of Midland United Company and Midland Utilities Company after the plan had been approved by the District Court of Delaware pursuant to Section 174 of the Bankruptcy Act, 11 U.S.C.A. § 574. The Circuit Court of Appeals held that the petitioners were not aggrieved because the orders of the Commission approving the plan were only interim orders. Additional

ground on which to base the decision can be found in the legislative history of subsection (f),[3] fortified by the authority of Chicago & N.W. Ry. Co. v. United States,[4] 52 F.Supp. 65, affirmed per curiam by the Supreme Court in 320 U.S. 718, 64 S.Ct. 369, 88 L.Ed. 422. There is a purposeful dichotomy in subsection (f). It makes no reference to integration of public utility holding systems and does not by its own terms require a plan to be fair and equitable. The duty to determine whether a plan is fair and equitable and to approve a plan only if it be such, is laid upon the district courts by reference to Section 11(d) of the Public Utility Holding Company Act or to some other statute conferring original jurisdiction upon the court in a particular proceeding. It seems apparent, therefore, that an order made by the Commission in aid of a proceeding under subsection (f) is in the nature of an advisory[5] or preliminary order and would not be reviewable under Section 24(a).

But the important factor insofar as the review machinery of Section 11 is concerned is that Congress intended that if the holding company came into a district court of the United States and jurisdiction was acquired by that court because of the failure of the company to obey the integration or simplification orders of the Commission or by virtue of the provisions of some other federal statute or law,[6] that court should adjudicate all questions relating to integration, simplification and the fairness and equity of the plan. In other words it was the intention of Congress if jurisdiction was vested in a district court, that that court and not a circuit court, should pass on the plan and determine and execute the course necessary for the integration and simplification of the holding company structure. See

---

[3] Senator Wheeler during the course of the debate as to the effect of subsection (f) said, "If I am not mistaken about the matter we employ exactly that procedure in railroad reorganizations at the present time." 79 Cong.Rec. 8845, 1935. See Note 2 of the opinion of the Circuit Court of Appeals in Okin v. Securities and Exchange Com'n, supra.

[4] The facts of the cited case were as follows. A review of an order of the Interstate Commerce Commission approving a plan of reorganization for a railroad company submitted in a 77 proceeding was sought before a three judge district court invoked under the Urgent Deficiencies Act, 28 U.S.C.A. § 47. Despite the fact that

the Urgent Deficiencies Act provides for a review of "any order of the Interstate Commerce Commission", the district court held that the provisions of the Urgent Deficiencies Act did not provide a review where these provisions were not made specifically applicable and the means for the review of the plan supplied by Section 77 were available.

[5] See also the provisions of Section 172 and 177 of the Bankruptcy Act, 11 U.S.C. A. §§ 572 and 577.

[6] The provision of subsection (f) would, I think, be applicable to the reorganization plan of a holding company in an equity receivership proceeding in the federal court.

the language of subsection (d), "* * * the trustee with the approval of the [district] court shall have power to dispose of any or all of such assets and, subject to such terms and conditions as the court may prescribe, may make such disposition in accordance with a fair and equitable reorganization plan which shall have been approved by the Commission after opportunity for hearing."

To come now to subsection (e). It is clear that Congress intended public utility holding companies to have the opportunity to submit their own plans to effectuate the provisions of subsection (b) of Section 11. If the Commission approves the plan submitted by a holding company as adequate to effectuate the provisions of subsection (b) and as "fair and equitable" to the persons affected by it, at the request of the company the Commission may apply to a district court to enforce and carry out the provisions of the plan. If the court finds the provisions of the plan to be "fair and equitable and * * * appropriate to effectuate the provisions of section 11," the court shall order the plan to be carried out. If the court had not been required to determine whether or not the provisions of the plan were "appropriate to effectuate the provisions of section 11", it is clear that the duty of the district court would lie solely in determining whether or not the plan was fair and equitable to the persons affected by it and the district courts would not be compelled to concern themselves with the questions of policy presented by subsection (b). Since the words "appropriate to effectuate the provisions of section 11" are used they must be given their natural meaning and since integration and simplification are the prime objectives of subsection (b), a district court must pass on all questions of integration and simplification presented as well as on the fairness of the plan.

The provision of subsection (e) that the Commission at the request of the holding company "may apply" to a district court to carry out the plan should be deemed to be of mandatory effect. In other words if the Commission approves the plan submitted by the company and is requested by the company to apply to a district court to enforce and carry out the plan in my opinion the Commission must take the requested action. The approval of the plan by the Commission plus the request that the Commission apply to a district court to enforce it and to carry out its provisions should be deemed to have the effect of "fixing" or "reserving" jurisdiction in a district court. The fact that the effectuation of the plan in the case at bar depends on the approval of the stockholders and of the district court aids this view for the Commission's order is inoperative until the conditions are met.

I can perceive no more reason for holding that a security holder may avail himself of the review provisions of Section 24(a) when the company has filed a Commission approved plan under subsection (e) of Section 11 than for holding that the security holder is entitled to such a review when a plan approved by the Commission is filed under subsections (d) or (f). It is clear that Congress did not intend that a security holder should have the right to a Section 24(a) review of an order of the Commission approving a plan submitted to a district court pursuant to the provisions of subsections (d) or (f).

The method, technique or device adopted by the Commission in the instant case in conditioning its order as indicated seems proper and well within the procedural field allotted to the Commission by Congress. Certainly the device adopted can do no harm to the rights of a security holder. The interpretation of subsection (e) by the Commission is entitled to great weight since it is the agency charged by Congress with the administration of the Public Utility Holding Company Act. The fact that subsection (b) expressly provides for a Section 24(a) review while subsections (d), (e) and (f) do not, is also very persuasive. Cf. our decision in Marquis & Co. v. Securities and Exchange Com'n, 134 F.2d 822 and the circumstances of the cited case.

For these reasons I concur in the decision of the court.