**PHILLIPS v. SECURITIES AND EXCHANGE COMMISSION et al.**

**No. 7.**

Circuit Court of Appeals, Second Circuit.

Jan. 7, 1946.

Randolph Phillips, of New York City (Julien Cornell, of New York City, on the brief), pro se.

Roger S. Foster, Sol., Securities and Exchange Commission, of Philadelphia, Pa. (Morton E. Yohalem, Counsel, Public Utilities Div., and Harry G. Slater and Arnold R. Ginsburg, Attys., Securities and Exchange Commission, all of Philadelphia, Pa., on the brief), for respondent Securities and Exchange Commission.

Clarence A. Southerland, of Wilmington, Del. (Whitman, Ransom, Coulson & Goetz, Richard Joyce Smith, and William T. Farley, all of New York City, on the brief), for respondent United Corporation.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is a petition to review orders of the Securities and Exchange Commission under § 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k (e), authorizing and directing the United Corporation to effect a plan for the redemption of a portion of its preferred stock. The United Corporation, a Delaware corporation, is the top unit of a holding-company system and a registered holding company under § 5 of the Act, 15 U.S.C.A. § 79e. On August 14, 1943, the Commission issued a simplification order under § 11(b) (2), requiring United to change its existing capitalization to a one-class, common-stock structure and to cease to exist as a holding company. United, in partial compliance with that order, submitted for the Commission's approval a plan by which it would offer its preferred shareholders an opportunity to exchange their stock for certain cash and common stock of Philadelphia Electric Company, one of United's major subsidiaries. The Commission on November 24, 1944, issued an order approving the plan on condition that it be amended in certain aspects, and then, the amendments having been duly filed, granted final approval of the amended plan by order of November 29, 1944.[1] Phillips, a beneficial owner of 1,100 shares of United's common stock, has now petitioned for review of both these orders.[2]

Chief among the petitioner's many contentions on this review is his assertion that the Commission exceeded its authority by issuing the effecting orders without first obtaining either a vote of the shareholders or an order of the proper district court. His demand of a vote is based on a pro-

---

[1] HCA Releases Nos. 5440, 5452. The simplification order, HCA Release No. 4478, is not challenged in this proceeding. Other orders of the Commission with respect to various aspects of this extensive holding-company system have been reviewed by the courts, e.g., Morgan Stanley & Co. v. Securities and Exchange Comm., 2 Cir., 126 F.2d 325; Public Service Corp. of New Jersey v. Securities and Exchange Comm., 3 Cir., 129 F.2d 899, certiorari denied 317 U. S. 691, 63 S.Ct. 266, 87 L.Ed. 553.

[2] The common stock in question is registered in the name of Phillips' brother, but his beneficial ownership is not challenged here. In addition, he holds proxies from other common and preferred shareholders which he obtained in connection with an election of directors; but they were given him with the express understanding that they would not be used to represent the shareholders in court proceedings.

vision of the Delaware statutes so requiring in case of a corporate "reorganization," Del. Corporation Law, § 5, par. 9, Del. Rev.Code 1935, § 2037, subd. 9, though United argues with force that this is rather a redemption of stock under § 27 of that law (§ 2059) where a vote is not specifically required. But whatever the situation under Delaware law, it is clear that the Public Utility Holding Company Act is a specific overriding federal law which obviously must control or else its very reason for existence is frustrated; and, indeed, petitioner himself appears to admit that the terms of the Act must be complied with, regardless of shareholder approval. Turning to the Act itself, we there find no requirement or suggestion of such a prerequisite.[3] Hence petitioner strenuously urges that § 11(d, e) requires the Commission to obtain a court order before directing United to effect the transfer; and this presents his substantial argument on this contention.

Section 11, "Simplification of holding company systems," is a long statutory provision imposing upon the Commission the duty of examining the corporate structure of public-utility holding-company systems and ordering simplification thereof. By subsec. (b) (2), the "great-grandfather clause," the Commission is charged with the duty of causing a holding company to cease to be a holding company with respect to subsidiaries which themselves have holding companies as subsidiaries; that is, of eliminating more than two tiers of holding companies in any holding-company system. By subsec. (c), Commission orders under (b) must be complied with within a year unless the Commission finds it in the public interest to extend the time for not more than another year. Then follow the two subsections here crucial. Under (d), the Commission "may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce compliance" with an order under (b); and

the court, to the extent it deems necessary to enforce the order, may "take exclusive jurisdiction and possession of the company." Subsec. (e) deals with the situation where the company itself has submitted a plan for Commission approval if "necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan." It provides that after approval, "the Commission, at the request of the company, may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan," whereupon the court has similar powers of enforcement as under (d). The cited provision of § 18, 15 U.S.C.A. § 79r, is one giving jurisdiction to "the proper district court of the United States" (i.e., of a district "wherein the defendant is an inhabitant or transacts business," § 25, 15 U.S.C.A. § 79y) to enjoin violation of the Act and to enforce compliance with it or with any rule, regulation, or order under it. A still later section, 24(a), 15 U.S.C.A. § 79x(a), contains the provision, under which this petition to review is brought to us, granting any person aggrieved by a commission order the right of direct petition to the circuit court of appeals of the circuit where he resides.

It seems now settled that conflicts in jurisdiction as between courts must be avoided, and hence that a circuit court of appeals will not pass upon a shareholder's petition for review while all equities may be adjusted by a district court in a pending proceeding brought by the Commission for enforcement of its order.[4] Like avoidance of unnecessary court action would suggest that litigation should not be forced upon the Commission and the company when neither finds it necessary, the general provision for review given a person aggrieved being adequate protection to dissenters. And in the face of the very clearly permissive wording of the statute,

[3] We regard as irrelevant the fact that the Commission has ordered a shareholders' vote in other instances on different plans or modifications of corporate structures or that it suggested (and United so informed its shareholders) that certain steps under its simplification order would require such vote, as indeed it appears to have done by a recent order as reported in the N. Y. Times for Dec. 29, 1945. The Commission must be free to determine this question with reference to the actual modification planned and the extent of the change of character of investment which this would mean to the shareholders; it cannot be held estopped by action taken or suggested by it in the light of other circumstances.

[4] Okin v. Securities and Exchange Comm., 2 Cir., 145 F.2d 206, remanded on a different point, 325 U.S. 840, 65 S.Ct. 1569; Gilbert v. Securities and Exchange Comm., 7 Cir., 146 F.2d 513; Lownsbury v. Securities and Exchange Comm., 3 Cir., 151 F.2d 217.

we are not disposed to strain for an interpretation of the statute which will force unneeded enforcement proceedings. We do not believe this choice of language can be considered inadvertent; in fact, the general provisions for enforcing compliance with the Act and regulations and orders thereunder, § 18(f), seem unusually explicit, stating that the Commission "may in its discretion" bring an action in the proper district court. Here the Commission has not applied for enforcement under (d), nor has United asked for action under (e). Hence the terms of the statute do not apply, and the petitioner's rights are safeguarded by his present petition. The Commission has heretofore taken the position that it need not apply for enforcement under § 11(d) where such action is not necessary.[5] There is certainly nothing to the contrary, if indeed there is not support, in the general statements in Commonwealth & Southern Corporation v. Securities and Exchange Commission, 3 Cir., 134 F.2d 747, 751, so much relied on by petitioner, where the point was not in issue[6].

The next major point of petitioner is that, even if no court order was necessary, the findings of the Commission were insufficient to support its conclusion that the plan was fair and equitable as required by § 11(e). His contention is that the stock transfer actually grossly overpaid the preferred shareholders and wasted the assets of the corporation. We find no such inadequacy in the findings. The plan as approved contemplated the offer to holders of United's "$3 Cumulative Preference Stock" of a package consisting of 1-8/10 shares of common stock of Philadelphia Electric Company, and $6 in cash for each share of United's outstanding preference stock up to 1,123,374 shares, or approximately 45% of the total outstanding of 2,488,712-1/6 shares. The Commission found that as of June 30, 1944, the date which it took for fixing values, the preference stock had a market price of $36.25 per share, as compared to a market price of $41.10 for the package. It also found that this stock was entitled on liquidation to a preference of $50 per share, or $124,435,608, plus arrears of dividends of $5.25 per share, or $13,065,738, of which about $56,168,700, plus dividend arrears of $5,897,713, would be eliminated by consummation of the plan. And it found a prospective value for Philadelphia Electric's common stock by capitalizing its estimated earnings at either 6% per annum, yielding values of $28.33 to $30 per share, or 6-1/2%, yielding values of $26.15 to $27.69 per share, or values for the package ranging —on the basis of United's original offer of $5 additional in cash—from $59 down to $52.07. Moreover, and perhaps more important, it found the underlying net asset value of the preference stock, based on the market price of United's portfolio holdings and cash, to be much higher than the market quotation, namely, $48.89 per share, so that upon consummation of the plan the net asset value for the remaining preference stock would be increased to $56.12 per share, while the like value of the common stock would jump from minus $1.09 to plus $.08 per share. And meanwhile the corporation would effect the required divestment of Philadelphia Electric Common in a simple and inexpensive way.

Hence the Commission concluded that the proposed offer was within permissible limits of fairness as to all three groups

---

[5] In the Matter of the United Light & Power Co., HCA Release No. 2923, 1941, 21-23. It has been argued that the Commission could not seek enforcement for a year because the company has that period for compliance under (c). Remarks of Commissioner Healy, "Section 11 of the Public Utility Holding Company Act," 26 P. U. Fort. 616, 623, and argument of the preferred shareholder in In re Standard Power & Light Corporation, D.C.Del., 48 F.Supp. 716. In the United Light & Power case the Commission argued persuasively that it need not apply for enforcement even after a year, pointing out, as Chairman Eicher had said in a then recent address, that where a company was making reasonable progress under its particular circumstances to carry out a § 11(b) order, neither it nor its security holders would be assisted by a court order, and stressing also the difference in statutory wording as to its compulsory duties as under § 11(b), with discretionary acts under § 11(d) or (e).

[6] The general language relied on as showing compulsion does not seem to us so intended. Thus the court says of § 11(e): "If the plan is one which can be carried out by the sole action of the parties thereto no further proceedings are needed. If not, the subsection authorizes the Commission, at the request of the company proposing the plan, to make application to a district court to enforce and carry out the plan."

of United's investors: those accepting and those not accepting among the preferred shareholders, and the common shareholders. In fact, its views were so far contrary to the petitioner's contentions that its only concern was whether the offer was sufficiently fair to those who might accept, and it required as one of the conditions for its approval of the plan that United raise its cash payment from $5 to $6 per package. (Other conditions—all accepted by United —mainly concerned the time periods for acceptance of the option or for keeping the option open in case it was undersubscribed.) And it said as a justification for not requiring more: "Stockholders may fairly be offered the choice of taking somewhat less in return for receiving their compensation sooner than others of the same class; and the chance that the others may eventually receive more is a factor for each stockholder to consider in making his choice."

■■ Petitioner points, however, to the difference between United's average corporate net income of $2.91 per share and the average package earnings of $3.56, as well as the difference in annual dividends actually paid upon the preference stock as compared to those received on the package assets, amounting to $1.05 per share over the years 1937 to 1944; and he stresses also the Commission's failure to find prospective values or earnings for the preference stock. But the Commission answers quite reasonably that it has never considered corporate earnings of a top holding company as an exclusive test of fairness, that here, indeed, United's interest in the actual earnings of its underlying companies, undistributed as well as distributed, amounted to $4.73 per preference share, and that petitioner was completely ignoring the dividend claim of the preference shareholders, while he emphasized the low return they had actually received. It further stated that, in view of the status of the reorganization of the subsidiary holding companies, it could not make a precise estimate of the prospective income of the preference stock. These conclusions appear justified under all the circumstances and well within the sphere of the Commission's peculiar competency. Of course, as it said, liquidation rights of shareholders alone should not be held controlling, Otis & Co. v. Securities and Exchange Commission, 323 U.S. 624, 65 S.Ct. 483; but here they were obviously deserving of careful consideration upon the issue of the fair limits of an offer to retire preferred stock. Moreover, the Commission clearly had in mind what petitioner has tended to overlook, namely, that the preferred shareholders were being asked to exchange a security with a prior accruing claim on a top holding company for common stock of a subsidiary.

■ Petitioner further urges that the Commission should not have applied the test of "fair and equitable" stated in § 11 (d, e), since it had ruled that the plan was not a reorganization so as to require a vote of the shareholders, but should hold it only a sale of securities under § 12(c, d)[7] where the test is rather the financial integrity of the company and where the laws of the market place must govern. And since the market price of the preference stock was some $4.85 a share lower than that of the proposed package on June 30, 1944, he claims that an unfair advantage has been given these shareholders. But the plan was actually filed under § 11, and we see no reason why it was not properly so filed. While not intended as a complete compliance with the Commission's simplication order, it was clearly a plan for "the divestment of control" of a subsidiary for the purpose of enabling United to comply with that order. Were we to make the assumption that the Commission might have considered the plan to be a transfer within the meaning of the later section, still it would be justified in applying the fair and equitable test, as indeed it has held in In the Matter of Western Public Service Co., HCA Release No. 4114, and In the Matter of Natural Power & Light Co., HCA Release No. 3211. This test has been consistently applied whenever the transaction was one designed to effect compliance in any form with § 11(b) (2). It should be noted that the issue which divided the Supreme Court in the Otis case and has since interested the commentators[8]

---

[7] United also asked the Commission for findings that the plan met the requirements of § 12(c, d), 15 U.S.C.A. § 79*l* (c, d).

[8] See, e.g., Dodd, The Relative Rights of Preferred and Common Shareholders in Recapitalization Plans Under the Holding Company Act, 57 Harv.L Rev. 295, 306; 58 Harv.L.Rev. 604; 33 Geo.L.J. 346; 13 Geo.Wash.L.Rev. 372; 93 U. of Pa.L.Rev. 308; 31 Va.L.Rev. 928; 54 Yale L.J. 840, 847.

is whether the Commission had not violated the rule of absolute priority at the expense of the preferred shareholders. And it would be anomalous if here the Commission should be held in error in allowing the corporation to offer its preferred investors somewhat nearer their full contract rights than is the current market value.

The petitioner's last major contention is that he was denied a fair hearing. He appeared at six hearings on the plan prior to the final hearing on November 6, 1944, which was held at his request and at which he filed briefs and made an extensive oral argument. The minutes of that hearing show that he there raised in substance all of the objections now urged. He contends further that the Commission made an ex parte adjudication on the question of the necessity for a shareholders' vote. This is based upon conversations between United's president and members of the Commission or its staff, developing the latter's view that such a vote was inappropriate under the circumstances. These conversations seem to us no more than legitimate prehearing conferences of the kind which the commissioners or their staff must have if all the intricate details involved in even a single holding-company simplification is to be carried to completion within the time of man.[9] Certainly a court would not be justified in interfering with such helpful preliminary conferences to expedite the settlement of details without a very definite showing of prejudice to an aggrieved party or eventual denial of a fair hearing. Here the Commission, as it showed at its hearings, did not hold itself bound by any of the preliminary steps, but gave the final judgment upon its view of the law—which coincides with our own, as we have shown—and in the exercise of a discretion which appears rational and reasonable.

In the course of the proceedings before the Commission, petitioner brought forth various conditions which he sought to engraft upon the plan if it were approved. His proposals related to cumulative voting, quorum requirements, and representations of minority groups at shareholders' meetings. They had no bearing on the approval of the present plan; and the Commission was justified in declining to consider them at this time. In fact, they appear designed to secure for petitioner that position in company affairs for which he waged a proxy battle only to lose it at the company's annual meeting.

Orders affirmed.

---

9 See pp. 102–104 of the Monograph on the Securities and Exchange Commission prepared by the staff of the Attorney General's Committee on Administrative Procedure, emphasizing the usefulness of the procedure.