In the Matter of **VALLEY GAS COMPA-NY, Blackstone Valley Gas and Electric Company, Eastern Utilities Associates.**

Civ. A. No. 2685.

United States District Court
D. Rhode Island.
Oct. 19, 1960.

Theodore Zimmerman, Thomas G. Meeker, David Ferber, Securities & Exchange Commission, Washington, D. C., for Securities & Exchange Commission.

Edward Winsor, Robert S. Davis, Edwards & Angell, Providence, R. I., for Valley Gas Co., Blackstone Valley Gas and Electric Co., and Eastern Utilities Associates.

Robert J. Conley, Morrissey & Conley, Providence, R. I., for Valley Gas Co. and Blackstone Valley Gas and Electric Co.

James H. Donnelly, Raymond J. McMahon, Jr., Providence, R. I., for objector John B. Kelaghan.

DAY, District Judge.

This is an application by the Securities and Exchange Commission pursuant to section 11(e) of the Public Utility Holding Act of 1935, 15 U.S.C.A. § 79k(e), for the approval of Step 1 of a certain plan, as amended, proposed by Eastern Utilities Associates to effectuate compliance with an order entered pursuant to section 11 (b) (1) of said Act by said Commission. Blackstone Valley Gas And Electric Company joined in the plan prior to its submission to said Commission. The order with which the proposed plan is designed to comply was entered on April 4, 1950. The order provided in pertinent part the following:

"It Is Ordered, pursuant to Section 11(b) of the Act, that in accordance with the provisions of the Act and the Rules and Regulations thereunder:

, \* \* \* \* \* \*

B. Eastern Utilities Associates shall sever its relationship with the gas properties owned by Blackstone Valley Gas And Electric Company by disposing or causing the disposition, in any appropriate manner not in contravention of the applicable provisions of the Act or the Rules and Regulations or orders promulgated thereunder, of its direct or indirect ownership or control of such properties."

Eastern Utilities Associates ("E.U. A.") is a registered holding company; Blackstone Valley Gas And Electric Company ("Blackstone") is an electric and gas utility subsidiary of E.U.A. and Valley Gas Company ("Valley") is a newly organized subsidiary company of Blackstone.

E.U.A., which is a voluntary association created by a declaration of trust, is solely a holding company. It owns 99.-19%, 97.65% and 97.83% respectively, of the outstanding shares of the common stock of Blackstone, Brockton Edison Company ("Brockton") and Fall River Electric Light Company ("Fall River"). Blackstone, Brockton, and Fall River, in the respective proportions of approximately 32%, 38% and 30% own all the outstanding securities of Montaup Electric Company ("Montaup"), a public utility company. These securities consist of first mortgage bonds, preferred stock and common stock.

Blackstone, a Rhode Island corporation, is a combination electric and gas public-utility company operating in Rhode Island in and around the cities of Pawtucket, Woonsocket and Central Falls. It obtains its gas supply from Tennessee Gas Transmission Company, a non-affiliated interstate pipe line company and its electric requirements primarily from Montaup which operates the principal generating station for the entire E.U.A. system. On April 30, 1960 Blackstone's electric property, plant and equipment, stated at cost, aggregated $24,975,000 and its reserve for depreciation of the electric plant amounted to $8,933,000 or 35% thereof. At the same time its gas property, plant and equipment stated at cost, amounted to $11,-162,000 and its reserve for depreciation of the gas plant amounted to $3,222,000, or 28.9% thereof. Of the $11,162,000 of gas plant, $10,347,000 is subject to the lien of Blackstone's first mortgage bond indenture.

As of April 30, 1960 Blackstone has outstanding $18,953,000 principal amount of first mortgage bonds, consisting of three series, i. e., $9,403,000 principal amount of 3% bonds, due 1973 and held by the public; $5,800,000 principal amount of 4⅛% bonds, due 1983 and held by the public; and $3,750,000 principal amount of 4⅛% bonds, due 1988 and held by E.U.A. For the twelve months ending April 30, 1960 the electric operating revenues of Blackstone aggregated about $13,010,000, and its gas operating revenues amounted to approximately $4,966,000; its gross income (before Federal income taxes) applicable to its gas department was approximately $558,000.

Valley was created in 1956 by a special act of the Rhode Island legislature for the purpose of acquiring and operating the gas properties now held by Blackstone. At the time of the submission of the plan involved in these proceedings Valley had outstanding three shares of its $10 par value common stock. These shares were held by officers or directors of Blackstone and were subject to the option of Blackstone to purchase the same. Valley by its charter is authorized to issue 400,000 shares of such $10 par value common stock. Upon its acquisition of said gas properties of Blackstone the plan provides that Valley will engage in the business of selling natural gas in the territory and to the customers formerly served by Blackstone.

Said plan is in two parts, designated as Step 1 and Step 2. In summary, they are as follows: (a) Under Step 1 Blackstone will deposit with the trustee under the indenture securing its outstanding first mortgage bonds, cash in an amount equivalent to the net book value of its gas

properties which are subject to the lien of said indenture. As of April 30, 1960, this amounted to $7,383,000. In addition, Blackstone will deposit with the trustee the sum of $81,000 representing the redemption premium, plus one month's duplicate interest on the bonds of Blackstone to be redeemed or otherwise retired and will thereby obtain the release of said gas properties from the lien of said indenture. Contemporaneously with the release thereof Blackstone will convey said gas properties, together with its unmortgaged gas properties and certain other assets, including cash, having a total net book value of $10,000,000 as of April 30, 1960, to Valley. In exchange for these assets Valley will issue its first mortgage bonds in the principal amount of $4,500,000 due 1985; 15 year promissory notes in the face amount of $1,500,000, and $3,999,970 par value (399,997 shares of $10 par) of common stock, being the balance of its authorized common stock. To obtain the money to deposit with said trustee and contemporaneously with the transfer of its gas properties, Blackstone will sell privately said bonds and notes of Valley, having a combined principal amount of $6,000,000, and will borrow the difference between the net book value of the released gas properties and said $6,000 on short term notes. The funds deposited with the trustee will be used, to the extent necessary, to retire outstanding Blackstone bonds in a principal amount equal to the cash so deposited, either by purchase or redemption as directed by Blackstone. Among the Blackstone bonds to be retired are the $3,750,000 principal amount of the 4⅛% series due 1988, all of which are held by E.U.A. as to which no redemption premium or duplicate interest will be paid.

(b) Under Step 2, Blackstone, as soon as practicable after the consummation of Step 1, will initiate proceedings to effect the sale to the public common stockholders of Blackstone and the shareholders of E.U.A., pursuant to an underwritten rights offering of the then outstanding 400,000 shares of the common stock of Valley at a price per share equivalent to the per share carrying value on the books of Blackstone. The proceeds from the sale of said shares will then be applied by Blackstone to the reduction of said short term notes.

After submission of said plan the Commission held a public hearing thereon on May 26, 1959 after due and appropriate notice. The record discloses that the Public Utility Administrator of the State of Rhode Island participated as a party in this hearing but made no objection to said plan. The sole objector to the plan was Mr. John B. Kelaghan, the holder of 21 shares of the common stock of Blackstone, who although he did not attend said hearing was later at his request permitted to file a brief in opposition to said plan. It further appears that at the time of said hearing E.U.A. was the owner of 99.19% of the outstanding common stock of Blackstone and that the balance of said stock comprising 1491 shares, including those owned by Mr. Kelaghan, was held by the public.

On August 10, 1960 the Commission issued its Findings and Opinion and Order finding said Step 1 of said plan necessary to effectuate the provisions of section 11(b) of said Act and fair and equitable to the persons affected thereby, and approving said Step 1.

Thereafter, on August 12, 1960, the Commission at the request of E.U.A., joined by Blackstone, filed the instant application for the approval and enforcement of said Step 1. Upon its filing an appropriate order of notice to all interested parties assigning said application for hearing was entered. At said hearing the sole objector was Mr. Kelaghan. He filed written objections to the plan upon the following grounds:

"(1) The plan is not appropriate or necessary to effectuate the provisions of Section 11(b) of the Act.

"(2) The plan is not fair and equitable.

"(3) The Commission has made an improper subjunctive finding at page 15 of its Findings and Opinion that compliance with the law of

the State of Rhode Island would be detrimental to the carrying out of the provisions of Section 11 of the Act."

In addition, he has moved to dismiss the application and to vacate the restraining order entered by me upon the filing of said application.

During the hearing by me the record of the hearing before the Commission was introduced in evidence by the Commission as an exhibit. No evidence was presented by the objector and the hearing was devoted to the presentation of legal arguments as to the sufficiency of the objections and the merits of the motions urged by the objector.

■ As above noted, Step 1 is designed to effectuate compliance with said order entered on April 4, 1950. No petition for judicial review of that order was ever filed and it is now too late to challenge its validity. Securities and Exchange Commission v. Louisiana Public Service Commission, 1957, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897; Lahti v. New England Power Ass'n, 1 Cir., 1947, 160 F.2d 845.

■ In support of his first objection the objector contends that for E.U.A. to comply with the terms of said order of April 4, 1950 it is by no means necessary that Blackstone form a new gas company and transfer its gas properties to such company in exchange for its stock. He suggests that E.U.A. could comply with said order "by putting its shares of Blackstone in a trust to dispose of its control of Blackstone or that it might procure a purchaser for the Blackstone gas properties at a price advantageous to Blackstone". The fact that some other plan or plans might have served to effectuate compliance with said order is immaterial. Under section 11(e) of the Act a plan for compliance with an order under section 11(b) need not be the only plan that might have fulfilled the statutory requirements. Lahti v. New England Power Ass'n, supra. In Commonwealth & Southern Corp. v. Securities and Exchange Commission, 3 Cir., 1943, 134 F.2d 747, at page 751, the Court said:

"* * * Congress evidently intended to permit the Commission to leave to the company involved the initiative in suggesting from among the available alternative methods that one which it deems most appropriate."

■ Here the plan was submitted by E.U.A. and joined in by Blackstone. And they have requested the Commission to seek approval and enforcement of Step 1 of said plan. In my opinion the Commission was warranted in finding that "since the action proposed is an appropriate means of achieving the results required by our order entered under section 11(b) (1), it satisfies the 'necessary' standard of section 11(e) even though it might not be the only plan capable of effectuating compliance with such requirements."

■ Under section 11(e) the scope of review by this Court is a limited one. The finding by the Commission that Step 1 of the plan is "fair and equitable" is conclusive, if supported by substantial evidence and arrived at "in accordance with legal standards." Securities and Exchange Commission v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 1380, 93 L.Ed. 1836. This finding is challenged on the ground that the Commission erroneously assumed that an application by Blackstone to the Public Utility Administrator of Rhode Island for a rate increase to its gas customers has been filed and that such rate increase was forthcoming. That this contention is incorrect seems clear from the record. Under the law of Rhode Island an increase in gas rates may become effective in the territory served by Blackstone by either of two Methods. Blackstone might apply for an increase in rates under 6 Gen.Laws, R.I.1956, § 39-3-11, or Valley might file initial rates higher than the old rates charged by Blackstone under 6 Gen.Laws R.I.1956, § 39-3-10. Under the amendments to the plan filed with the Commission on August 1, 1960 the second method of direct initial filing by Valley is required. It is clear from its opinion that the Com-

mission contemplated this action by Valley as appears from note 15 on page 12 of its opinion, wherein it specifically refers to "the difference between the existing gas rates of Blackstone and the initial gas rates to be adopted by Valley". Moreover, in the same note, the Commission indicated its awareness that such an increase in gas rates would actually be required even though Blackstone continued indefinitely its ownership of said gas properties or if the gas properties were transferred to and operated directly by Valley. Mindful as I am of the limited scope of this review, I am of the opinion that the finding of the Commission that Step 1 of said plan is fair and equitable is supported by substantial evidence and was arrived at "according to legal standards".

■ The third ground of objection to the approval of Step 1 is that the Commission made an improper subjunctive finding "at page 15 of its Findings and Opinion and Order that compliance with the law of the State of Rhode Island would be detrimental to the carrying out of the provisions of section 11 of the Act". This ground was neither urged by the objector in his oral argument nor in his brief. And there was no showing by him that the Commission was not warranted on the evidence in making said finding. The record discloses that the Public Utility Administrator of Rhode Island, on June 15, 1960, entered two orders in proceedings relating to Blackstone and Valley which were then pending before him. The first order approved the joint petition of Blackstone and Valley to permit the transfer of the gas properties of Blackstone to Valley and to permit the acquisition by Blackstone of the common stock of Valley. The second order approved the issuance of first mortgage bonds, 15 year promissory notes and common stock by Valley. An appeal from the first order was taken by the objector and this appeal was pending on August 10, 1960, the date of the Commission's opinion. Under sections 9(a) and 10 of said Act, 15 U.S.C.A. §§ 79i(a), 79j, the acquisition by Blackstone of securities of Valley requires the approval of said Commission. And under Sub-section 10(f) of said Act the Commission has no authority to approve any such acquisition as to which an application is made under Section 10 unless it appears to the satisfaction of the Commission that such State laws as may apply in respect of such acquisition have been complied with, "except where the Commission finds that compliance with such State laws would be detrimental to the carrying out of the provisions of section 11." In view of the fact that said appeal from the first order of the Public Utility Administrator of Rhode Island was pending on August 10, 1960, it was both proper and requisite for the Commission to consider and decide whether an eventual determination by the appropriate appellate body or the courts of Rhode Island that the proposed acquisition by Blackstone would not be in compliance with the laws of Rhode Island would be detrimental to the carrying out of the provisions of said section 11.

■ In my opinion the objector's motion to dismiss requires little discussion. Step 1 for which approval is sought in this proceeding is part of a voluntary plan to effectuate compliance with said order of April 4, 1950. The plan was proposed by E.U.A. against which the order was directed and joined in by Blackstone, the owner of the gas properties referred to in said order. In addition, Valley has entered a general appearance in this proceeding, has submitted itself to the jurisdiction of this Court, and seeks approval of said Step 1.

It is obvious that the Commission was aware when it entered its order of April 4, 1950 that E.U.A. could sever its relationship with the gas properties of Blackstone in several ways. One of these was by causing Blackstone, which it controlled, to divest itself of its gas properties. In this manner its indirect relationship and control of such properties will be severed and compliance with said order will be effectuated. This it has elected to do.

■ The motion to vacate said restraining order, not having been heard prior to the hearing on the merits, has become moot and requires no discussion.

In conclusion, I approve said Step 1 as fair and equitable and as appropriate to effectuate the provisions of section 11 of the Act. Counsel for the applicant will prepare and present for entry an order to carry out the terms and provisions of said Step 1.