John B. KELAGHAN, Objector,
Appellant,

v.

SECURITIES AND EXCHANGE COM-
MISSION et al., Appellees.

No. 5780.

United States Court of Appeals
First Circuit.

March 24, 1961.

Raymond J. McMahon, Jr., and John B. Kelaghan, Providence, R. I., for appellant.

Joseph B. Levin, Asst. Gen. Counsel, Washington, D. C., with whom Walter P. North, Gen. Counsel, and Solomon Freedman, Asst. Director, Div. of Corporate Regulation, Washington, D. C., were on brief, for Securities and Exchange Commission, appellee.

Robert H. Hopkins, Boston, Mass., with whom Andrew M. Wood, Bancroft Wheeler, Boston, Mass., Edward Winsor, Providence, R. I., Gaston, Snow, Motley & Holt, Boston, Mass., and Edwards & Angell, Providence, R. I., were on brief, for Eastern Utilities Associates, Blackstone Valley Gas and Electric Co., and Valley Gas Co., appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Blackstone Valley Gas and Electric Company, a Rhode Island corporation, is an operating company supplying gas and electricity to public consumers in Rhode Island. Ninety-nine per cent of its stock is held by Eastern Utilities Associates (EUA), a Massachusetts holding company, whose other assets consist of most

of the stock of two Massachusetts operating companies which sell electricity, only, to the public. Each of the three operating companies owns approximately one-third of the stock of Montaup Electric Company, a producer of electric power from which they obtain most of their supply. Blackstone obtains its gas from an independent pipeline company. In 1950, after notice to all parties, the SEC conducted hearings and issued an order under section 11(b) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(b), requiring EUA to terminate its existence unless it performed certain acts. In addition, if EUA chose to continue in existence, it was ordered to "sever its relationship with the gas properties owned by Blackstone." No appeal was taken from this order. After performing the acts first referred to, EUA filed a proposal, in two steps, for the disposition of the gas properties. The SEC approved step one of the plan, and applied to the United States District Court for the District of Rhode Island, pursuant to section 11(e) of the act, for enforcement. Its petition was supported by all parties except Kelaghan, an owner of some of Blackstone's publicly held shares. The district court approved of step one and Kelaghan appeals.

Step one calls for Blackstone to dispose of its gas retailing business by transferring it to Valley Gas Company, a newly formed subsidiary of Blackstone, in exchange for stock and debt obligations of Valley. Subsequently, under step two, not now before the court, Blackstone will sell the Valley stock, with the public stockholders of Blackstone having preemptive rights and EUA's proportionate share being made available to EUA's stockholders. Appellant complained that the plan was not "necessary to effectuate the provisions of subsection (b)," that it was not "fair and equitable" to the minority shareholders of Blackstone, and that it was beyond the scope of the SEC's power under the act.[1] The district court correctly pointed out that a plan could be

"necessary" within the meaning of the statute even though some other plan was possible. Lahti v. New England Power Ass'n, 1 Cir., 1947, 160 F.2d 845, 850; see American Power & Light Co. v. S. E. C., 1946, 329 U.S. 90, 112–121, 67 S.Ct. 133, 91 L.Ed. 103. Appellant does not now question this ruling.

■■ In affirming the Commission's determination that the plan was fair and equitable to all parties, the court appropriately limited its review to considering whether the Commission's findings were supported by substantial evidence and were arrived at in accordance with legal standards. S. E. C. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 126, 69 S.Ct. 1377, 93 L.Ed. 1836. We have considered the details of the plan and the Commission's findings, and are satisfied with the correctness of the court's conclusion as to fairness. Further discussion of this issue seems unwarranted.

Put most baldly, appellant's claim that the SEC lacked power to approve the plan is that section 11(b) (1) does not expressly authorize, and section 11(b) (2) expressly prevents, a plan which affects as this one does a subsidiary, like Blackstone, which is strictly an operating company. It contends that such a subsidiary cannot be ordered to divest a part of its business in order to save from extinction a holding company which owns some, but not all, of the subsidiary's stock when such a divestment will result in a change in the subsidiary's corporate structure. Before treating this, possibly insubstantial, contention, we must consider the SEC's argument that it is too late for appellant to make it. The original (1950) order called for EUA's "disposing or causing the disposition * * * of its direct or indirect ownership or control of" the gas properties "owned by Blackstone Valley Gas and Electric Company." The SEC argues that it is clearly contemplated by this language that Blackstone would be required to part with these properties and remain in the sys-

---

1. Appellant also complained of a ruling on the effect of state law. This was clearly within the power of the SEC. Section 10 (f), 15 U.S.C.A. § 79j(f).

tem.[2] Under the authority of sections 11(b) and 24(a), 15 U.S.C.A. § 79x(a), an appeal from this order was permitted within 60 days after its entry.[3] Therefore, it says, any challenge to its authority thus to affect Blackstone should have been made during this period.

The extent to which appellant is precluded by his failure to have appealed from the 1950 order is to be determined by familiar principles of res judicata. Obviously, that order did not outline the present plan in all its particulars. And we would agree that the inclusion of unlawful provisions in a plan is not to be justified simply by saying that the plan as a whole satisfies the requirements of the order. But if the order points to, and compliance with one of its stated alternatives can fairly be expected to produce, a plan with certain basic characteristics, then the propriety of those characteristics has necessarily been passed upon, and interested parties must protest then, or never. The order permitted EUA to comply either "by disposing or causing the disposition" of the gas properties. Conceivably it might "dispos[e]" of its interest in the gas business by selling its Blackstone stock. One may doubt whether such action was within the reasonable contemplation of the parties, as EUA would thereby have lost control of 32 per cent of the stock of Montaup, the principal supplier of electricity for its other two companies, and the entire complex would have been fundamentally impaired.[4] But we can think of no way available to EUA of "causing the disposition" of this property other than by utilizing its ownership of Blackstone stock so as to bring about a disposition by Blackstone. If

this procedure was beyond the power of the SEC, appellant should have complained when the original order was issued.

Judgment affirmed.

2. The Commission had expressly found that Blackstone was included in an integrated electric public-utility system with EUA at the apex. Eastern Utilities Associates, 1950, 31 S.E.C. 329, 348.

3. Appellant, in meeting the government's argument, makes no claim that he did not have opportunity to appeal, cf. American Power & Light Co. v. S. E. C., 1 Cir., 1944, 141 F.2d 606, 624, affirmed 329 U.S.

90, 67 S.Ct. 133, 91 L.Ed. 103, but merely asserts that he did not have to.

4. "The core of potential integrated operation of the EUA system is to be found in Montaup * * *." Eastern Utilities Associates, 1950, 31 S.E.C. 329, 346. In spite of appellant's protests, we are impressed with the argument that even for Blackstone separation from the system would be worse than the proposed severance of its gas business.