In the Matter of **VALLEY GAS COMPANY, Blackstone Valley Gas and Electric Company, Eastern Utilities Associates.**

**Civ. A. No. 2685.**

United States District Court
D. Rhode Island.
July 10, 1964.

Solomon Freedman, Esq., Associate Director, Div. of Corporate Regulation, Robert F. McCulloch, Atty., S.E.C., Washington, D. C., for Securities and Exchange Commission.

Edwards & Angell, Providence, R. I., Gaston, Snow, Motley & Holt, Boston, Mass., Edward Winsor, Providence, R. I., Robert H. Hopkins, Boston, Mass., of counsel, for the Companies.

Raymond J. McMahon, Jr., Providence, R. I., for the objector, John B. Keleghan.

DAY, District Judge.

This is a supplemental application by the Securities and Exchange Commission pursuant to section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e) for the approval of step 2 of a certain plan, as amended, proposed by Eastern Utilities Associates (EUA) to effect compliance with an order issued on April 4, 1950 by said Commission under section 11(b) of said Act. Blackstone Valley Gas and Electric Company (Blackstone) joined in said plan prior to its submission to said Commission. Said order, entered on April 4, 1950, provided in pertinent part as follows:

> "IT IS ORDERED, pursuant to Section 11(b) of the Act, that in accordance with the provisions of the Act and the Rules and Regulations thereunder:
>
> \* \* \* \* \* \*
>
> "B. Eastern Utilities Associates shall sever its relationship with the gas properties owned by Blackstone Valley Gas And Electric Company by disposing or causing the disposition, in any appropriate manner not in contravention of the applicable provisions of the Act or the Rules and Regulations or orders promulgated thereunder, of its direct or indirect ownership or control of such properties."

EUA is a registered holding company; Blackstone is an electric and gas utility subsidiary of EUA supplying gas and electricity to public consumers in Rhode Island; and Valley Gas Company (Valley) is a newly organized subsidiary of Blackstone.

The plan proposed by EUA consisted of two parts designated as step 1 and step 2. Under step 1, Blackstone was to dispose of its gas retailing business by transferring it to Valley in exchange for the entire authorized capital stock and certain debt obligations of Valley. Step 1 was approved by the order of the Commission dated August 10, 1960, and subsequently was approved and ordered enforced by this Court. In the Matter of Valley Gas Company, 1960, D.C.R.I., 193 F.Supp. 808, aff'd sub. nom. Kelaghan v. S. E. C., 1961, 1 Cir., 288 F.2d

67. In its order of August 10, 1960, the Commission reserved jurisdiction with respect to step 2 of said plan.

Step 1 was finally consummated on August 1, 1961. In conformity therewith, Blackstone's gas properties, upon their release from the lien under its mortgage, were transferred to Valley. As consideration therefor Blackstone received Valley's total authorized capital stock of 400,000 shares of common stock, par value of $10 per share, together with bonds and notes of Valley in the principal amounts of $4,500,000 and $1,500,-000, respectively. In 1961 these bonds and notes were sold by Blackstone to institutional investors, its only holdings thereafter in Valley consisting of said 400,000 shares of the common stock of Valley.

After the consummation of step 1 and the sale by Blackstone of said bonds and notes, EUA joined by Blackstone and Valley, applied for approval by the Commission of step 2 of said divestment plan.

Under step 2, Blackstone proposes to offer its 400,000 shares of the common stock of Valley for sale through a rights offering to the public holders of its common stock, to the stockholders of EUA and to the employees of Valley, as follows:

"(1) The public common stockholders of Blackstone will receive warrants evidencing their primary right to subscribe to two and eighteen hundredths (2.18) shares of common stock of Valley for each share ·of common stock of Blackstone held at the record date, or an aggregate of 3,254.74 shares of Valley (0.81%).

"(2) The holders of common shares of EUA will receive warrants evidencing their primary right to subscribe to thirty-one hundredths (0.31) of a share of common stock of Valley for each common share of EUA held at the record date, or an aggregate of 389,962.95 shares of Valley (97.49%).

"(3) The public stockholders of Blackstone and the stockholders of EUA may also subscribe (subject to allotment) to the balance of 6,-782.31 shares of Valley stock not initially offered under the primary rights pursuant to (1) and (2) above and to any Valley shares not subscribed for under the primary rights.

"(4) The employees of Valley at the record date will receive warrants under which each employee may subscribe, subject to allotment, for any number up to but not exceeding one hundred (100) shares of Valley common stock not subscribed for by the stockholders of Blackstone and EUA pursuant to (1), (2) and (3) above."

The warrants to be issued to the stockholders of Blackstone and EUA will be fully transferable; those issued to the employees of Valley will be nontransferable. No fractional shares of Valley stock will be issued; ·in lieu thereof, arrangements will be made enabling stockholders to purchase or sell rights relating to fractional shares at no brokerage cost to them.

The aggregate subscription price for the Valley shares will be an amount approximating the then book value of the 400,000 shares on the books of Valley, plus the expenses (estimated at $100,000) incurred in connection with the proposed offering and sale. As of August 31, 1963, the book value of the Valley shares was $4,299,179, or $10.75 per share. The net proceeds from the sale of said 400,-000 shares of the common stock of Valley will be applied by Blackstone to the reduction of its outstanding short term indebtedness.

Step 2 also contemplates that said offering will be underwritten and registered under the Securities Act of 1933. Blackstone proposes to invite bids pursuant to Rule 50 under said Act for the purchase from it of all the shares of Valley common stock, if any, which are not subscribed for by said stockholders of

Blackstone and EUA or said employees of Valley at the same price per share as set forth in the warrants. Each bid will specify the amount to be paid by Blackstone to the bidder as compensation for the commitment.

After appropriate notice, a public hearing was held by the Commission on step 2 of said plan. The record discloses that no one appeared at this hearing to oppose said step 2. The sole objector to the plan was Mr. John B. Kelaghan, the holder of 21 shares of the common stock of Blackstone, who, although he did not appear at said hearing, filed a statement with the Commission contending that step 2 is not fair and equitable because it makes no provision for appraisal rights for common stockholders of Blackstone who may object to said plan.

On March 3, 1964, the Commission issued its Findings and Opinion and Order finding that step 2 of said plan was necessary to effect the provisions of section 11(b) of the Public Utility Holding Company Act of 1935, that said step 2 is fair and equitable to the persons affected thereby and satisfies other applicable provisions of said Act and approving said step 2.

Thereafter, on March 6, 1964, the Commission filed this application for the approval and enforcement of said step 2. Upon its filing, an appropriate order of notice to all interested parties assigning said application for hearing was entered by me. At the hearing on April 28, 1964 before me, the sole objector was Mr. Kelaghan. In accordance with the provisions of said order of notice, he filed a written statement of objections to said step 2 which reads in pertinent part as follows:

"(1) Step 2 of the Plan is not fair and equitable to the persons affected thereby in that there is no provision for the appraisal and redemption of the shares of the common stockholders of Blackstone Valley Gas and Electric Company who object to the Plan. * * *

"(A) Under Rhode Island Law, a stockholder of a corporation is entitled to relief under the general equity powers of the court should such company drastically alter its mode of operation contrary to the provisions of its Charter. * * *

"(B) The Commission in approving Step I of the Plan effectively ousted any jurisdiction of the State in the matter, * * *.

"(C) This plan is not 'fair and equitable to all persons effected [sic] thereby' because the minority holders of Blackstone owned an interest in a company that held a franchise and monopoly to serve an area with both gas and electricity as sources of energy. When Valley Gas Company stock is distributed it will sell gas in competition with Blackstone's selling of electricity for they will be two independent and competing companies. * * * The dual monopoly of such sources of energy, presently owned directly, will not be owned indirectly under the plan. Recognition and consideration of this factor are essential in determining what is 'fair and equitable' to the minority holders of Blackstone. The rights of dissenting Stockholders ought not to be ignored, abolished or precluded by a Plan approved by the Federal Court."

During the hearing before me the record of the hearing before the Commission was introduced into evidence by the Commission as an exhibit.

■ Under section 11(e) of said Act, the scope of review by this Court is limited to considering whether the Commission's findings were supported by substantial evidence and were arrived at in accordance with legal standards. S. E.C. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 126, 69 S.Ct. 1377, 93 L.Ed. 1836; Kelaghan v. Securities and Exchange Commission et al., 1961, 1 Cir., 288 F.2d 67.

■ In my opinion the objector's contention that step 2 is not fair and equitable because no provision is made therein for the appraisal and redemption of the shares of dissenting stockholders of Blackstone is without merit. If it be assumed, as he contends, that a dissenting stockholder could under Rhode Island law secure such relief in its Courts, it is clear that the Public Utility Holding Company Act is a specific overriding federal law which controls. Otis & Co. v. S.E.C., 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; Phillips v. Securities and Exchange Commission, 1946, 2 Cir., 153 F.2d 27. And under section 11(b) of said Act provisions for rights of appraisal and redemption are not prerequisites for the approval of a plan under said section.

The objector's additional contention, not previously urged before said Commission, that step 2 of said plan is not fair and equitable because the Commission gave no recognition to the rights of minority stockholders in Blackstone to own an interest in a "dual monopoly", so-called, is likewise in my opinion without merit. There is no evidence in the record which supports any such contention nor has there been any showing by him as to why or how the Commission could have taken such a so-called right into consideration in determining whether said step 2 of said plan was fair and equitable.

■ Furthermore, there has been no showing by him that the indicated subscription price for the Valley shares of stock is not fair and warranted by the evidence upon which the Commission established it. Under step 2, minority stockholders of Blackstone and stockholders of EUA are accorded the right to purchase said shares of Valley on the basis of their relative interests in Blackstone and thus to own directly that which they now own indirectly. In my judgment, the minority stockholders of Blackstone are accorded fair and equitable treatment and are entitled to nothing more. Having in mind the limited scope of this review, I am of the opinion that the findings of the Commission that step 2 of said plan is necessary to effectuate the provisions of section 11(b) of said Act, and is fair and equitable to the persons affected thereby and satisfies other applicable provisions of said Act were supported by substantial evidence and were arrived at in accordance with legal standards.

Accordingly, I approve said step 2 of said plan as necessary to effectuate the provisions of said section 11(b) and as fair and equitable to the persons affected thereby. Counsel for the applicant will prepare and present for entry an order to carry out the terms and provisions of said step 2.