JOHN B. KELAGHAN *vs.* PUBLIC UTILITY HEARING BOARD.

DECEMBER 29, 1960.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This statutory petition for a reversal of certain orders of the respondent board was brought pursuant to the provisions of general laws 1956, §§39-5-2 and 39-5-14. The orders for which reversal is sought were entered by the respondent board in the matter of a joint petition filed with it by Blackstone Valley Gas and Electric Company, hereinafter referred to as Blackstone, and Valley Gas Company, hereinafter referred to as Valley, for its consent to and approval of a proposed sale by Blackstone of certain of its assets and properties to Valley, the purchase by Blackstone of certain shares of stock of Valley, and the issuance of stock, bonds, and notes by Valley.

A hearing on the joint petition was held by the public utility administrator in November 1959, and the instant petitioner appeared thereat as a remonstrant objecting to a grant of consent and approval for the proposed transactions and moved that the joint petition be dismissed by the administrator. On June 15, 1960 the administrator entered two orders, in one denying the objector's motion to dismiss the joint petition and in the other giving consent and approval to the transactions set out in that petition.

Thereafter, on June 20, 1960, the instant petitioner appealed to the public utility hearing board from the orders so entered by the administrator so far as said orders con-

sented to and approved the sale of Blackstone's properties to Valley and to the purchase of shares of stock in Valley by Blackstone. After hearing on that appeal the board on October 19, 1960 entered orders in which it affirmed the orders of the administrator. It is for a reversal of these orders that the instant petition was filed.

On November 1, 1960, while the instant petition was pending in this court, Blackstone and Valley moved for leave to intervene in the instant matter, contending that they are parties in interest within the purview of said §§39-5-2 and 39-5-14. On November 4, 1960 leave to intervene was granted, and thereafter the intervenors moved to dismiss the instant petition. The case is now before this court on that motion.

The issue before us may be better understood if we summarize briefly the circumstances which gave rise to the instant petition. On April 4, 1950 the securities and exchange commission, hereinafter referred to as the commission, acting pursuant to sec. 11 (b) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §79k (b), ordered Eastern Utilities Associates, a registered holding company, to "sever its relationship with the gas properties owned by Blackstone Valley Gas and Electric Company by disposing or causing the disposition * * * of its direct or indirect ownership or control of such properties."

Thereafter, on May 15, 1959 Eastern Utilities Associates and Blackstone, acting jointly, applied to the commission for its approval of an amended plan submitted by them pursuant to the provisions of sec. 11 (e) of the act, 15 U.S.C.A. §79k (e). On May 26, 1959 the commission held a hearing on the plan thus submitted wherein it was proposed that Blackstone divest itself of the gas properties in question in two steps, the details of which need not be set out here. At the hearing so held the only objector to the plan was the instant petitioner, who did not appear personally but filed a brief wherein he set out his objections.

The commission issued its decision and order on August 10, 1960 wherein it found that step 1 of the plan was necessary to effectuate the provisions of said sec. 11 (b), 15 U.S.C.A. §79k (b), and was fair and equitable to the persons affected thereby and gave its approval to step 1. Included in that decision was a finding of the commission that compliance with the law of the state of Rhode Island with respect to the acquisition of the securities and properties involved would be detrimental to the carrying out of the provisions of sec. 11 of the act.

On August 12, 1960 the commission, at the request of Blackstone and Eastern Utilities Associates, applied to the United States District Court for the District of Rhode Island, hereinafter referred to as the district court, for an approval and an enforcement order for step 1 of the plan pursuant to the pertinent provisions of sec. 11 (e) of the act. A hearing was held thereon on September 26, 1960, and thereafter on October 19, 1960 the district court entered a decision approving step 1 of the plan and subsequently on October 21, 1960 entered its enforcement order of step 1 of the plan pursuant to its decision.

Pertinent to the proceedings undertaken to comply with the commission's order of April 4, 1950 are the provisions of sec. 10 of the act, 15 U.S.C.A. §79j, which relate to the acquisition of securities or utility assets by holding companies. Under the provisions of sec. 10 (f) of the act the commission is without authority to approve such acquisition unless it appears to the satisfaction of the commission that there has been a compliance with applicable state law "except where the Commission finds that compliance with such State laws would be detrimental to the carrying out of the provisions of section 11."

When the proceeding with which this court is concerned is examined in the light of this background, it becomes clear that it is in no manner a part of the proceedings that have been conducted before the commission and the district

court. The proceeding now before us was undertaken pursuant to pertinent provisions of our statute which require the consent and approval of the public utilities administrator of this state for certain transactions between utility companies, G. L. 1956, §39-3-24, and for the issuance of securities by utilities, §39-3-17. Section 39-3-25 provides for hearings for the giving of such consent and approval. However, it is clear from all the circumstances that the procedure was undertaken by Blackstone and Valley in the instant case primarily for the purpose of having the consent and approval of the state administrator evidence to the commission that applicable provisions of state law had been complied with in making the acquisitions in question.

In the instant case, however, it is conceded that the commission found pursuant to the exception contained in sec. 10 (f) of the act that compliance with applicable state law would be detrimental to the effectuation of the provisions of sec. 11. The effect of such finding was to remove the limitation set out in said sec. 10 (f) on the authority of the commission to approve the acquisitions involved in giving effect to step 1 of the plan. Having found that compliance with state law would be detrimental to an effectuation of sec. 11 of the act, it was within the authority of the commission to approve these acquisitions whether or not there was compliance with the applicable provisions of state law.

In such circumstances a decision of this court on the instant petition that the public utilities administrator of this state had erred in giving his approval and consent to the acquisitions involved in an effectuation of step 1 of the plan would be without force and effect and meaningless insofar as an effectuation of that step by the district court is concerned. Once the limitation of the exception in sec. 10 (f) has been removed, the jurisdiction of the commission and the district court in these matters is absolute and complete. The impact of the federal law on state courts in these circumstances is very aptly stated in *Woodsum* v.

*Portland R.R.*, 144 Me. 74, where at page 90 Mr. Justice Thaxter said: "By the terms of the Public Utility Holding Company Act of 1935, U.S.C.A. Tit. 15, Sec. 79k, the Securities and Exchange Commission was given wide powers to reorganize public utility holding companies throughout the country. These powers, assumed and exercised by the federal government, are derived from the commerce clause of the constitution and, in so far as necessary to carry out the policy of the statute, are exclusive. In other words, the states are barred, either by legislation or by court action from interfering in any way with the overriding federal authority."

We are constrained to conclude that to proceed further under the instant petition would be without purpose, for our decision thereon, whatever it might be, would have no effect whatever on the proceedings designed to enforce and accomplish step 1 of the plan now pending before the commission and district court. It is clear that the primary, if not the only, purpose of the instant proceedings in our state courts was to evidence that there had been a compliance with applicable state law with respect to the acquisitions involved in accomplishing step 1. The finding of the commission concerning the detrimental effect of state law has made such evidence unnecessary. To hear and determine the instant petition for reversal of orders of the respondent board would in such circumstances constitute superfluous action in which this court will not engage.

The motion of the intervenors to dismiss the instant petition is granted, and the petition is hereby dismissed solely for the reason above stated and without regard to its merits otherwise.

*James H. Donnelly, Raymond J. McMahon, Jr.*, for petitioner.

*Edwards & Angell, Edward Winsor, Robert S. Davis, Ernest N. Agresti, Morrissey & Conley, Robert J. Conley*, for intervenors.