(No. 42257.—

JOSEPH C. ELLIS *et al.*, Exrs. and Trustees, Appellants, *vs.*
ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed January 28, 1970.*

SAMUEL W. BLOCK, JOHN C. TUCKER, JONATHAN T. HOWE, JON MARCH, and CLEMENT F. SPRINGER, all of Chicago, and FRANK E. TROBAUGH, of West Frankfort, (JENNER & BLOCK, and SPRINGER, CARSTEDT & THOMPSON, of counsel) for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, (PETER A. FASSEAS, Assistant Attorney General, of counsel,) for appellee Illinois Commerce Commission.

GEORGE B. PLETSCH, WILLIAM T. HART, ROGER P. PASCAL, and SCHIFF, HARDIN, WAITE, DORSCHEL & BRITTON, all of Chicago, for appellee Illinois Power Co.

Mr. JUSTICE CULBERTSON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon County affirming orders of the Illinois Commerce Commission which had denied petitions of plaintiffs for leave to intervene as parties in an administrative hearing being conducted by the Commission. Plaintiffs contend that the refusal to grant leave worked a denial of their right to due process of law; that they had a statutory right to intervene; and that, if the right does not exist, the refusal by the Commission was an abuse of its discretion.

Illinois Power Company, (hereinafter IP,) and Central Illinois Public Service Company, (hereinafter CIPS,) are investor-owned public utilities engaged principally in the generation, distribution and sale of electricity at retail and the sale of natural gas at retail in contiguous areas extending over the southern two-thirds of the State of Illinois. They have pooling agreements, use joint transmission lines in some instances, and have various other physical and financial ties based on contractual agreements. As of February 29, 1968, IP had assets of nearly $600,000,000, while those of CIPS were in excess of $350,000,000. CIPS has outstanding 10,390,800 shares of common stock, without

par value, and 375,000 shares of cumulative preferred stock with a par value of $100 per share. The preferred stock represents 12.5 per cent of the company's capitalization, and it is prior to and "cushioned" by a common-stock equity of $104,967,747, which is 35 per cent of capitalization. In all, there are five series of preferred stock, included in which is an issue of 75,000 shares of 4.90% cumulative preferred, currently redeemable at $110 per share plus accrued dividends. Substantially all of the latter series, or 20 per cent of the preferred stock, is owned by the plaintiffs. All of the preferred stock votes share for share with the common stock, as required by Illinois law, the latter having about 96½ per cent of the voting power and the former approximately 3½ per cent.

Among other things, the CIPS articles of incorporation provide that the dividend rate of the preferred stock is fixed and cannot be altered by any action of the Board of Directors; that the dividends are cumulative and must be paid before any dividend can be declared on the common stock; that common-stock dividends cannot be paid unless certain retained earnings reserves are maintained; that so long as the preferred stock is outstanding, CIPS may not issue or assume any unsecured debt which would exceed 15% of the aggregate of the secured debt and total capital and surplus of the corporation; and that the preferred stock is entitled to special voting rights in relation to amendments to or changes in its rights, privileges or protective provisions.

With a purpose of effecting a corporate affiliation which would permit more efficient service, greater improvement potential, and the possible development of nuclear facilities, IP has proposed, subject to the approval of the appropriate State and Federal regulatory bodies, to exchange 0.65 shares of IP common stock for each of the outstanding shares of the common stock of CIPS. The effectiveness of the offer is conditioned upon the tender of 82 per cent plus of the outstanding shares of CIPS common stock, and the pro-

posal recognizes that under the Public Utility Holding Company Act of 1935, (15 U.S.C.A. §§ 79j-79z,) IP will be required to institute proceedings to acquire the remainder of the common stock not voluntarily exchanged, so as to eliminate any outstanding minority common-stock interest. In short, if the transaction is permitted, IP will own and control all of the CIPS common stock. The proposal does not contemplate the redemption or retirement of the senior securities of CIPS, which consist of first mortgage bonds and the preferred stock heretofore mentioned. After affiliation, CIPS would continue to issue senior securities in order to finance plant additions, and would continue to operate with its management responsible to a separate board of directors.

Both IP and CIPS are subject to the jurisdiction of the Illinois Commerce Commission, pursuant to the provisions of the Public Utilities Act and the Electric Supplier Act. (Ill. Rev. Stat. 1967, ch. 111⅔, pars. 1-95; 401-416.) Accordingly, on April 29, 1968, IP filed a petition with the Commission for approval of the transaction, and of the issuance of common stock necessary to consummate it, as required by the act. The transaction is also subject to the jurisdiction of the United States Securities and Exchange Commission (SEC) and, on April 30, 1968, IP also filed an application for approval with that agency as required by the Public Utilities Holding Company Act of 1935.

On June 10, 1968, a hearing was held before an SEC examiner. Each of the plaintiffs here requested, and was granted, leave to intervene and participate in the proceedings without objection by IP. Among other things, the requests for leave to intervene set forth that the transaction as proposed would create business conflicts between the IP and CIPS; create conflicts between the preferred and common stockholders; result in an inequitable distribution of the voting power; unduly complicate the corporate and capital structure of CIPS and IP; result in the loss of man-

agement responsible to the independent corporate interests of CIPS; and impair the marketability of CIPS preferred stock. The relief requested, entirely appropriate under the provisions of subsections (b) and (e) of section 79j of the Public Utilities Holding Company Act of 1935, (15 U.S.C.A. § 79j(b) and (e),) was that SEC approval be conditioned upon either redemption of the preferred stock by CIPS, or its purchase by IP at redemption prices, or an offer by IP of shares of its common stock having a value equal to the redemption price of the CIPS preferred. As proposed, redemption, purchase or exchange would be at a cost of $38,975,000 and, in this regard, subsequent evidence presented to the SEC has disclosed that, as of September 23, 1968, the preferred stock had a fair market value of only $26,850,000.

Following the session of June 10, 1968, further hearings were held by the SEC on August 12 through 15, and September 24 through 26, 1968. Plaintiffs fully participated, taking advantage of the rights accorded them to cross-examine IP witnesses, to introduce their own evidence and to file briefs and present arguments. Specifically, they introduced evidence of conflicts between IP and CIPS which might develop, testimony dealing with the possibility that CIPS might be operated in such a way as to enhance the interest of the common stockholders at the expense of the preferred stockholders, and testimony as to the purported impairment of the value of the preferred stock if the transaction was permitted to occur.

The first hearing on the application made to the Illinois Commerce Commission was held June 13, 1968, before an examiner. Plaintiffs appeared and presented petitions for leave to intervene as parties and made statements in support thereof. In substance, the allegations were much the same as the intervention requests presented to the SEC, and they also sought to have Commission approval conditioned upon redemption, purchase or exchange of the preferred stock.

Indeed, one of the petitions was couched in terms that the Commission could not properly grant its consent and approval to the transaction unless one of such conditions was imposed. The same petition, somewhat inconsistent with arguments now made in this court, also averred that the Commission should postpone its consideration of the matter until the SEC hearings were completed. While counsel for IP and CIPS expressed belief that intervention would result in needless repetition of proof, they nevertheless offered to withdraw any objections, in order to avoid delay, if plaintiffs would agree to immediately proceed with the Commission hearing. This offer was refused, whereupon the examiner declined to pass upon the petitions and referred them to the full Commission after directing IP and CIPS to file written objections and fixing a time for plaintiffs to reply thereto.

On July 10, 1968, the Commission denied the petitions and subsequently, on August 29, 1968, also denied plaintiffs' petitions for rehearing, after which appeals were prosecuted to the circuit court. In the meantime, the Commission conducted hearings on the IP application on July 15 and 29, 1968, and entered an order on October 30, 1968, approving the transaction. One paragraph of the order found and held: "Petitioner has provided evidence showing the transactions proposed by the Petitioner will not adversely affect the interest of minority and Preferred Stockholders of CIPS." As indicated, the circuit court affirmed the orders denying leave to intervene and this appeal by plaintiffs to this court has followed.

We find it necessary to consider only one aspect of this case. Where the question has arisen, both Federal and State courts have held that in holding company matters wherein the SEC has jurisdiction to consider and protect the rights of investors affected by the capital structure of a public utility, its jurisdiction is overriding and is binding on State authorities. (*Phillips* v. *Securities & Exchange Com.* (2d

cir. 1946), 153 F.2d 27, 29; *Nichols* v. *Alker* (2d cir. 1956), 231 F.2d 68, 74; *Kelaghan* v. *Public Utility Hearing Board* (R.I. 1960), 166 A.2d 421, 424; *In re Valley Gas Co.* (D.C. R.I. 1964), 231 F. Supp. 886, 890; *Application of Okin* (1946), 187 Wisc. 697, 65 N.Y.S. 2d 23, 24; *Auburn Savings Bank* v. *Portland R. Co.*, 144 Me. 74, 65 A. 2d 17, 28-29.) In *Phillips,* for example, it was shown that the Delaware corporation law required a shareholder vote in corporate reorganizations. And in reviewing an SEC order relating to the simplification of a holding company structure which did not provide for such a vote, the court said (153 F.2d at 29) : "But whatever the situation under Delaware law, it is clear that the Public Utility Holding Company Act is a specific overriding federal law which obviously must control or else its very reason for existence is frustrated; * * *." Again, in *Okin,* a shareholder sought an order to compel a special meeting of shareholders, pursuant to the New York Stock Corporation Law, to vote upon a proposed sale of the common stock of certain public utilities owned by the respondent holding company. In denying relief, the New York court cited *Phillips* and stated : "The Public Utility Holding Company Act is a specific overriding Federal Law. The proposed sale is governed by the provisions of that Act, and not by Section 20 of the Stock Corporation Law, or any other State statute. The provisions of the Federal Act must be complied with, irrespective of State statute, and regardless of stockholder approval." 65 N.Y.S. 2d at 24.

In the case of *In Re Kings County Lighting Co.* (D.C.N.Y. 1947), 72 F. Supp. 767, (affirmed in *Public Service Com. of New York* v. *Securities Exchange Com.,* (2d cir. 1948), 166 F.2d 784, *certiorari* denied 334 U.S. 838,) there occurred a direct confrontation between the SEC and the Public Service Commission of New York State. Involved was a plan, presented to both regulating bodies for approval, for the reorganization of an intrastate

operating public utility corporation, all of whose common stock was owned by a registered holding company under the Federal Public Utility Holding Company Act. There, somewhat comparable to the provisions of sections 21 and 27 of the Illinois Public Utilities Act, (Ill. Rev. Stat. 1967, ch. 111⅔, pars. 21 and 27,) the laws of New York State required the approval of its Public Service Commission for the issuance of any securities by a gas or electric corporation, or for the effectuation of any plan to change the corporate structure without the approval of the stockholders. Also, comparable to the provisions of sub-section (f) (15 U.S.C.A. § 79j(f),) in the present case, the applicable provisions of the Federal Holding Company Act required the SEC to satisfy itself that State law had been complied with. Issue arose when the New York commission refused to approve a plan that had SEC approval, whereupon the SEC applied to a district court for an order approving and enforcing the plan. In granting the application, the court held that the Federal Act overrode the State statutes, and rejected the notions that a State commission could veto the actions of the SEC, or that the statutory direction that the SEC was to satisfy itself that State laws had been complied with could be construed as a limitation on the powers vested in the SEC by the Federal Act.

Based upon the foregoing decisions, and looking to the express language of sub-sections (b) and (e) of section 79j of the Public Utility Holding Company Act of 1935, we believe that, *insofar as investor protection is concerned,* the Federal government has preempted the field and has caused the jurisdiction of the SEC to be exclusive to that extent in matters which come before the SEC under authority of the Public Utility Holding Company Act of 1935. (*Cf. First Iowa Hydro-Electric Cooperative* v. *Federal Power Com.,* 328 U.S. 152, 167-168, 90 L. Ed. 1143.) This being so, the Illinois Commission cannot be said to have abused its discretion, or to have violated its duty, by refusing to hear matters

committed to the exclusive jurisdiction of the SEC by the overriding Federal law.

It is true that one of the petitions for leave to intervene went beyond matters relating to investor protection and alleged that the proposed transaction was "contrary to the convenience and best interests of the public in that the proposed transaction, if approved, would eliminate competition between the companies to the detriment of the consuming public." Manifestly, however, this allegation is bottomed on a false premise and afforded no reasonable basis for granting plaintiffs leave to intervene as parties. This is not a unique ground to justify intervention by preferred stockholders, because the interest of the common stockholders is essentially the same.

What has been said largely disposes of plaintiffs' further contention that the Commission's refusal to permit them to intervene denied them due process of law. Undoubtedly, administrative proceedings are "governed by the fundamental principles and requirements of due process of law." (*Brown* v. *Air Pollution Control Board*, 37 Ill.2d 450, 454.) And as it applies to the right to be heard, procedural due process requires that a litigant be given an opportunity for a hearing before a legally competent tribunal which has jurisdiction of the subject matter and the parties. (*Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus*, 154 U.S. 421, 426-427, 38 L. Ed. 1031; *Baldwin* v. *Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524, 75 L. Ed. 1244; *Chicago Land Clearance Com.* v. *Darrow*, 12 Ill.2d 365, 369-370.) That requirement was met in this case when plaintiffs were accorded a full hearing on the matter of the protection of their investments before the SEC, an agency with recognized expertise in the matters plaintiffs sought to have investigated. Under the circumstances, and particularly in view of the overriding effect of the Federal Act, due process did not require that plaintiffs be afforded a hearing by the Illinois Commission on identical matters.

While the appeal from the orders denying leave to intervene was pending in the circuit court of Sangamon County, plaintiffs, without objection, also filed in the circuit court a copy of the Commission order of October 30, 1968, which approved the transaction. They now take the position that this action constituted an "appeal" from such order and seek to attack certain of its findings as being against the manifest weight of the evidence. While it is debatable as to whether plaintiffs had standing to appeal, an appeal from the order of October 30, 1968, could not have been perfected by the mere filing of the order in the circuit court. Section 68 of the Public Utilities Act, (Ill. Rev. Stat. 1967, ch. 111⅔, par. 72,) contemplates notice and other steps to be taken in order to perfect an appeal and itself provides that a court shall not permit participation by those who have not "taken an appeal from such rule, regulation, order or decision in the manner as herein provided." Having failed to comply with the statute, plaintiffs are therefore not at liberty to urge error with respect to the Commission's order approving the proposed transaction.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*