BALTIMORE GAS AND ELECTRIC COMPANY, et al.

v.

Frank O. HEINTZ, et al.

Civ. No. Y-83-2571.

United States District Court, D. Maryland.

March 14, 1984.

Roger D. Redden, Francis X. Wright, James A. Biddison, Jr., and David A. Brune, Baltimore, Md., for plaintiffs.

Kirk J. Emge, Baltimore, Md., for defendant The Public Service Com'n of Maryland.

Gregory V. Carmean, Baltimore, Md., for defendant Maryland Office of People's Counsel.

Marianne M. Keler, Washington, D.C., for amicus curiae S.E.C.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The Baltimore Gas & Electric Co. (BG & E), a public utility supplying natural gas and electricity to Baltimore City and nine Maryland counties, has been stymied by the Maryland Public Service Commission (PSC) in its efforts to rearrange its corporate organization. The utility and its proposed holding company, BGE Corp., filed this declaratory judgment action seeking to have the state law under which the PSC acted (Md.Ann.Code art. 78, § 24(e)) de-

clared unconstitutional or in conflict with federal law.

Having reviewed the numerous documents filed by the parties—including the intervening defendant People's Counsel of Maryland and an *amicus curiae* (the Securities and Exchange Commission)—and having conducted a hearing on the matter, the Court finds that Section 24(e), as applied to the plaintiffs, is unconstitutional, as it violates the Commerce Clause of the United States Constitution.

FACTS

The factual allegations necessary for resolution of this case are undisputed, making disposition on the cross motions for summary judgment appropriate.

About seventy percent of the outstanding stock of BG & E is held by residents of states other than Maryland, making it clear that the securities of BG & E are commodities in interstate commerce.

The attempted reorganization of the utility began when BG & E incorporated its proposed holding company, called BGE Corp., and filed an application with the PSC to transfer all the assets of BG & E to the new holding company on the basis of a share-for-share exchange with the stockholders of the existing corporation. When the joint application of the utility and its proposed holding company was filed with the PSC in November, 1982, the announced reason for the reorganization was to separate the utility and non-utility divisions of the company under the holding company structure, which would "facilitate the regulation of utility operations" and allow the company's non-utility divisions to diversify into activities other than the distribution of gas and electricity, without being held accountable to the PSC.

The Maryland Public Service Commission appointed a panel which took evidence and heard argument on the application in three hearings (in January, March and April of 1983). Midway through the hearing process, the office of the Maryland People's Counsel, which represents the interests of consumers in regulatory proceedings and in litigation, filed a motion to dismiss based on Section 24(e), which prohibits certain types of public utility holding companies altogether, allows some with the approval of the PSC, and allows others even without the approval of the PSC. Specifically, Section 24(e) provides:

> No public service company shall take, hold, or acquire any part of the capital stock of any public service company of the same class, organized or existing under or by virtue of the laws of this State, without prior authorization of the Commission. No stock corporations of any description (except, with the authorization of the Commission, a company of the same class) shall take, hold, or acquire more than ten percent of the total capital stock of any public service company organized under or by virtue of the laws of this State, unless such stock is to be taken as collateral security and the Commission approves of its being so taken; and no such public service company shall be party to the violation of this subsection. For the purposes of this subsection, a company controlling a public service company shall be deemed a public service company of the same class as the controlled public service company.

Although this entire provision is relevant because of the plaintiffs' equal protection claim, the portion of Section 24(e) which prevented BG & E's corporate reorganization mandates that "no stock corporation of any description" may acquire any significant portion of the stock of a utility which is a Maryland corporation, with one exception not relevant here. It should be noted that another exception to this outright prohibition allows a "company of the same class"—or a company engaged in providing the same type of service (*e.g.*, electricity or telephone service)—to acquire another company with PSC approval. Because the BGE Corp. was a "stock corporation" not already owning a utility company of the same class as BG & E, and because BG & E is a Maryland corporation, the Commission read the law as absolutely barring BGE Corp. from acquiring more than 10 percent of the stock of BG & E.

After a fourth hearing, the full commission rejected the joint application of BGE Corp. and BG & E on June 16, 1983. Shortly thereafter, the plaintiffs brought this declaratory judgment action.

The history of the application of Section 24(e) is important in view of the equal protection claim of the plaintiffs. The plaintiffs have cited a number of instances in which the PSC allowed acquisitions of utility companies to take place, apparently in violation of the law. Indeed, the Commission acknowledged in its answer to the complaint that

> ... there have been some instances in which the acquisition of the stock of a utility company by a holding company which does not already control a public service company of the same class has been approved by the Commission.

In the field of energy regulation, however, the plaintiffs cite only two examples of PSC approval of energy utilities held by holding companies which are not owners of other utilities in Maryland:

(1) Columbia Gas of Maryland, Inc. (a Delaware corporation distributing gas to three Maryland counties) is a subsidiary of Columbia Gas Systems, Inc., also a Delaware corporation. It should be noted that this corporate organization is not a violation of the letter of Section 24(e), since the subsidiary utility is not a Maryland corporation.

(2) Potomac Edison Company (a Maryland corporation which distributes electricity to parts of seven Maryland counties) is a subsidiary of the Allegheny Power System, Inc.

The defendants maintain—and it has not been disputed—that in those proceedings where acquisitions apparently in violation of Section 24(e) were approved, the PSC was not aware of Section 24(e), or if it was aware of the provisions of Section 24(e), the prohibition was not "expressly addressed and resolved by the Commission."

## STATE INTEREST

The plaintiffs claim that Section 24(e) violates the Commerce clause of the United States Constitution, that its application to BG & E is a violation of the equal protection and due process clauses of the Constitution, and that it is an unlawful attempt by the state to legislate in an area which has been pre-empted by federal law. The validity of all three challenges to Section 24(e) depends largely on whether the State of Maryland has a legitimate state interest which is rationally served by the prohibition contained in Section 24(e). Therefore, the state interest asserted by the defendants is a logical starting point.

The parties have expended considerable effort looking for and debating the state interest considered by the Maryland legislature when Section 24(e)'s predecessor was first enacted, in the early part of this century. The parties appear to agree that the law was lifted in its entirety from legislation approved in New York state, since portions of the New York law which could not be applicable in Maryland (at one point, the bill talked of regulatory "commissions," although Maryland had only one relevant commission) appear in the original bill approved by the Maryland legislature. The plaintiffs argue that there was no legitimate state interest when the bill which contained what is now Section 24(e) was approved, since the evils perceived in relation to utility holding companies in New York were absent from Maryland; indeed, they argue there were no utility holding companies in Maryland at that time.

The plaintiffs' argument is doubly flawed. First, even if the perceived evils were not present in Maryland at the time the legislation was enacted, the Maryland legislature could have legitimately feared that utility holding companies were a growing national trend, and could have acted to prohibit the companies from coming to Maryland before any of them were formed. The second problem is that, at least for the purposes of Equal Protection and Due Process analysis, it matters not what state interest the legislature announced for Section 24(e). The state interest to be weighed or examined by the Court is *any* ground which can be *conceived* of to justify the

state law. *McDonald v. Board of Election,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). The reason for sanctioning this judicial creativity (in imagining an appropriate legislative purpose even where the legislative history shows none) is evident: if a law served no legitimate state interest when passed, but a legitimate state interest rationally served by the law has since appeared, it would be inane to require the legislature to repeal the earlier law, and re-enact it with an announcement of the appropriate, legitimate state purpose.

Before discussing the state interest asserted in this case, it should be noted that the United States Supreme Court recently recognized that state governments, having granted utilities monopoly powers, have a particularly vital interest in regulating those companies.

> ... the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States. *Arkansas Electric Cooperative Corp. v. Arkansas Public Commission,* —— U.S. ——, ——, 103 S.Ct. 1905, 1908, 76 L.Ed.2d 1 (1983).

In its attempt to justify the outright ban on certain types of holding companies, the Public Service Commission has noted the historical objections to holding company structures, including theories that they facilitate stock watering and similar forms of misfinancing, that they make corporate accounts unavailable to regulatory agencies and facilitate the manipulation of the various subsidiaries, and that, through the use of excessive "service charges," they are able to milk the subsidiaries, causing utilities to show increased expenses and requiring regulatory agencies to raise rates higher.

The plaintiffs argue that these purported grounds do not justify preventing the formation of utility holding companies, since the Commission has the ability under Maryland law to require answers to questions about most of these matters, and that it has the power—indeed the obligation—to approve or deny the sale of major assets. These other controls available to the PSC to curb possible abuses of the regulatory system do not completely vitiate the state's interest in preventing holding companies, however. A state could legitimately conclude that utilities would usually be more amenable to regulation if the regulatory commission is not forced to make these inquiries, to untangle finances or decipher transactions between a utility and its affiliates.

■ Nevertheless, this Court must examine the purported state interest in light of the exceptions made to the prohibition in Section 24(e). *Martin Marietta v. Bendix Corp.,* 690 F.2d 558, 567 (6th Cir.1982). And here, an exception to the outright prohibition on utility holding companies weakens the asserted state interest.

Section 24(e) excuses from its outright prohibition those holding companies which already own utilities of the same class as the target utility, and allows those holding companies to acquire utilities with the approval of the PSC. It is difficult to envision how the state interest could be any different with regard to those holding companies which already own a utility. The defendants have argued that there may be certain efficiencies which would result from what essentially amounts to the merger of two utilities so that a state could logically excuse them from the absolute prohibition. However, efficiencies may also be present in the creation of a holding company structure where, as here, the holding company does not already own another utility. Here the asserted efficiencies would be that the utility is engaged in providing some services which are regulated, and seeks to expand into areas where regulation would be inappropriate.

Consequently, the Court finds that the state has a legitimate interest, expressed through Section 24(e), in controlling the formation of utility holding companies, but that the outright prohibition on the formation of holding companies such as BGE Corp. serves no legitimate state interest. The evils associated by the defendants with the holding company structure could be addressed just as adequately through a

permissive procedure in which PSC approval is required for the transfer of the assets from the regulated utility to the proposed holding company. In such a proceeding, the PSC can examine the proposed structure to determine whether any efficiencies could result from the reorganization, and whether the perceived problems may actually result.

PRE–EMPTION

■ Although the Court has determined that Section 24(e) is unconstitutional as it imposes a burden on interstate commerce in violation of the Commerce Clause, a discussion of the plaintiffs' pre-emption claim is appropriate before addressing the constitutional issue. The constitutional claim should be addressed last because a court should hesitate to address the constitutionality of a challenged statute if other grounds exist which would invalidate the law or its application.

> Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons. *Siler v. Louisville & Nashville R. Co.,* 213 U.S. 175, 193 [29 S.Ct. 451, 455, 53 L.Ed. 753] (1909) cited in *Hagans v. Lavine,* 415 U.S. 528, 546 [94 S.Ct. 1372, 1383, 39 L.Ed.2d 577] (1974).

■ The plaintiffs claim that Section 24(e) irreconcilably conflicts with the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79i(a)(2), and thus violates the Supremacy Clause of the United States Constitution, Art. VI., clause 2. The cited section of the Public Utility Holding Company Act allows a holding company to be established and to acquire the stock of utilities if approved by the Securities and Exchange Commission.

The standard to be applied by courts in determining whether a federal law has pre-empted state legislation which is being challenged was recited in *Jones v. Rath Packing Co.,* 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977):

> The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. Our task is "to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

There is not much precedent on the issue of whether a state law regulating utility holding companies conflicts with the federal act, which is not surprising in light of the plaintiffs' claim at oral argument that the Maryland law is the only one of its kind in the country and the defendants' acknowledgement that it is one of only a handful of similar laws. At least one state court has held that the federal act pre-empts state regulation insofar as the state is attempting to protect *investors* in public utilities, but that court expressly emphasized it was limiting its finding of pre-emption to state laws which aim at investor protection.

> Based upon the foregoing decisions, and looking to the express language of subsections (b) and (e) of Section 10 of the Public Utility Holding Company Act of 1935 [15 U.S.C. § 79j(b), (e) ], we believe that, *insofar as investor protection is concerned,* the Federal government has pre-empted the field and has caused the jurisdiction of the SEC to be exclusive to that extent in matters which came before the SEC under authority of the Public Utility Holding Company Act of 1935. *Ellis v. Illinois Commerce Comm'n.* [44 Ill.2d 438], 255 N.E.2d 417, 421–422 (Ill. 1970) (emphasis in original).

In the context of protection of rate payers, however, this Court has determined that Section 24(e)'s outright prohibition on certain types of public utility holding companies is not contradictory to the "purposes and objectives of Congress" as expressed in the Public Utility Holding Company Act (PUHCA) of 1935. The plaintiffs have attempted to construe the legislative history of the federal act as showing a federal intent to "foster" holding companies. However, a clear reading of the Act indicates that Congress had no such purpose— rather, the Act was intended to bring the

utility holding companies under control, and in those rare circumstances in which they were allowed to continue in existence, to be subject to extensive monitoring by the SEC.

Furthermore, the PUHCA is replete with provisions recognizing and honoring state regulation, so Congress could hardly have intended to abolish state controls. *See, e.g.,* 15 U.S.C. §§ 79f(b), 79i(b), 79g(g) and 79r(b).

The Court is also persuaded by the *amicus curiae* brief filed by the Securities and Exchange Commission. The mere fact that the SEC thinks that Section 24(e) is not pre-empted by the PUHCA of 1935 is persuasive, since the SEC is charged with enforcement of the PUHCA, and the construction of a statute by the agency charged with its enforcement is entitled to deference, *Nat'l Labor Rel. Bd. v. Boeing Co.,* 412 U.S. 67, 75, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752 (1973).

## COMMERCE CLAUSE

[5] Having rejected the nonconstitutional challenge to the state law at issue, the Court must proceed to analyze the plaintiffs' constitutional claims.

The plaintiffs claim that Section 24(e) is a violation of the Commerce Clause of the United States Constitution, Art. 1, § 8, cl. 3, in that it imposes either a direct burden on interstate commerce or imposes an indirect burden which is excessive in relation to the state interest served by the law. The Court declines the plaintiffs' invitation to make a bright-line distinction between direct and indirect burdens. Rather, the relevant Supreme Court decisions indicate that a balancing test is more appropriate.

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the puta-

tive local benefits... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 [90 S.Ct. 844, 847, 25 L.Ed.2d 174] (1970).

Indeed, in a more recent opinion, the Supreme Court indicated that the "supposedly precise division between 'direct' and 'indirect' effects on interstate commerce" was being abandoned, noting that the general trend in "our more modern Commerce Clause jurisprudence" is to

> look in every case to "the nature of the state regulation involved, the objective of the state, and the effect of the regulation upon the national interest in the commerce." *Arkansas Electric Corporation v. Arkansas Public Commission,* [— U.S. —, —, 103 S.Ct. 1905, 1910, 76 L.Ed.2d 1] (1983) citing *Illinois Gas Co. v. Public Service Co.,* 314 U.S. 498, 505 [62 S.Ct. 384, 387, 86 L.Ed. 371] (1942).

Where the state law at issue discriminates against out-of-state products, services or entities in favor of those in state, there is a strong presumption of a violation of the Commerce Clause. As the Court stated in *Arkansas Electric,* the "most serious concern identified in *Bruce Church*" was "economic protectionism." — U.S. at —, 103 S.Ct. at 1917.

■ Section 24(e) applies only to the acquisition of stock in "public service companies ... organized or existing under the laws of this State." In other words, Maryland's own corporations are subjected to more profound restrictions than are out-of-state corporations and economic protectionism is not an issue. Therefore, the Court must weigh the effect on interstate commerce against the state interest served by Section 24(e). Applying this balancing test, the Court finds that the burden on interstate commerce is excessive, particularly in light of the Court's finding, above, that the

purported state interests could be "promoted as well with a lesser impact on interstate activities."

The burden of Section 24(e) on interstate commerce includes all those effects which naturally spring from the prohibition on reorganizing the company into a holding company structure: preventing the company from diversifying into areas outside the control of the PSC, affecting BG & E's ability to secure financing, prohibiting BG & E's stockholders from exchanging their shares of BG & E for shares of BGE Corp. While this burden on interstate commerce is not so overwhelming as to lead the Court to conclude—at least at this point—that the state Public Service Commission could not prohibit the formation of the holding company after a thorough study and reasoned decision, the ban resulting from the absolute prohibition of Section 24(e) is excessive in light of the less restrictive alternative—a law which would allow the formation of public utility holding companies, but only on the approval of the PSC. The only state interest served by the legislature's absolute ban on holding companies in BGE Corp.'s situation is the avoidance of the administrative costs which might be associated with PSC consideration of an application by BG & E and BGE Corp., costs which could be avoided by an outright ban. However, the costs of such a procedure do not outweigh the burden on interstate commerce resulting from the absolute ban on public utility holding companies.

Having determined that the application of Section 24(e) to the plaintiffs violated the Commerce Clause, the Court need not reach the plaintiffs' Equal Protection and Due Process claims. Nor will the Court engage in the sensitive business of attempting to redraft Section 24(e) to meet Constitutional criteria. Rather, the Court finds that the reading of Section 24(e) to constitute an absolute ban on public utility holding companies, as applied to the plaintiffs in this case, is an unconstitutional infringement on interstate commerce.